IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JOY A. TOLBERT,                    )
                                   )
              Plaintiff,           )
                                   )
      v.                           )        1:15CV437
                                   )
CAROLYN W. COLVIN,                 )
Acting Commissioner of            )
Social Security,                   )
                                   )
              Defendant.           )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Plaintiff Joy A. Tolbert ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), codified as amended at 42 U.S.C. § 405(g), to obtain review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Disability Insurance Benefits ("DIB") and a Period of Disability ("POD") under Title II of the Act.

Presently before this court are Plaintiff's Motion for Judgment and accompanying brief (Docs. 8-9), and the Commissioner's Motion for Judgment on the Pleadings and accompanying memorandum (Docs. 10-11). This court also has

before it the certified administrative record,[1] and this matter is now ripe for adjudication. After careful consideration of the evidence of record, the Decision of the Administrative Law Judge ("ALJ"), and the governing legal standard, this court concludes that the Decision of the ALJ should be affirmed.

## I.    BACKGROUND

Plaintiff filed applications for DIB and a POD in November of 2012, alleging a disability onset date of January 28, 2010. (Tr. at 227-28.) The applications were denied initially and again upon reconsideration. (Id. at 170-73, 175-78.) Plaintiff then requested a hearing before an ALJ. (Id. at 181-82.) Plaintiff, her counsel, and a vocational expert ("VE") were present at the September 4, 2014 hearing. (Id. at 107-44.)

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Doc. 5.)

After the hearing, the ALJ determined that Plaintiff was not disabled under the Act.[2] (Id. at 84-98.)

More specifically, the ALJ concluded (1) that Plaintiff had not engaged in "substantial gainful activity" during the relevant period, January 28, 2010 through June 30, 2012, the date last insured ("DLI"), and (2) that Plaintiff's osteoarthritis, lumbar degenerative disc disease, history of carpal tunnel surgery in 1992, depression, and obesity were severe impairments. (Id. at 86.) However, the ALJ concluded that the disorders did not meet or equal a listed impairment. (Id. at 88-90.)

_____

[2] "The Commissioner uses a five-step process to evaluate disability claims." Hancock v. Astrue, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id. A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. Id.

-3-

The ALJ then determined that Plaintiff had the Residual Functional Capacity ("RFC")[3] to perform light work, so long as she was limited to (1) only occasional climbing of stairs and ramps, and no climbing of ropes, ladders, or scaffolds; (2) only occasional bending, balancing, crouching and stooping; (3) no kneeling or crawling; (4) only frequent handling, fingering and feeling with both upper extremities; (5) the ability to sit/stand every two hours at her workstation, as well as standing and walking totaling six hours out of an eight-hour workday; (6) simple, routine, repetitive tasks with simple, short instructions in a job that required making only simple work-related decisions, (7) few workplace changes, and (8) only frequent contact with supervisors, co-workers, and the public. (Id. at 90-91.)

The ALJ then concluded that Plaintiff was able to perform her past relevant work as a sock boarder. (Id. at 96.) Next,

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines v. Barnhart, 453 F.3d 559, 562 (4th Cir. 2006) (citation omitted). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall v. Harris, 658 F.2d 260, 265 (4th Cir. 1981). "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

-4-

based on Plaintiff's age, education, her work experience, and her RFC, the ALJ found in the alternative that there were jobs in the national economy that she could perform. (Id. at 97.) Accordingly, the ALJ entered a Decision that Plaintiff was not disabled and denied her benefits. (Id. at 98.)

Plaintiff requested that the Appeals Council review the ALJ's Decision. (Id. at 20.) On April 23, 2015, the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (Id. at 1-4.) Plaintiff then initiated this action.

## II.  LEGAL STANDARD

Federal law authorizes judicial review of the Commissioner's denial of social security benefits. 42 U.S.C. § 405(g); Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Fray v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue,

667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472.

-6-

## III. **PLAINTIFF'S ASSERTIONS OF ERROR**

Plaintiff asks this court to reverse the Decision of the Commissioner, and in support of her request, she makes several arguments. First, Plaintiff contends that the ALJ did not give sufficient reasons for the weight she attributed to a consultative examiner and to a primary care provider. (Pl.'s Mem. in Supp. of Mot. for J. on the Pleadings ("Pl.'s Br.") (Doc. 9) at 5.) Second, Plaintiff contends that the ALJ did not properly consider her activities of daily living ("ADL's") in determining her credibility and RFC. (Id. at 10.) Third, Plaintiff contends that the ALJ failed to explain why her moderate limitations in concentration, persistence, and pace ("CPP") were not incorporated into the RFC. (Id. at 12.) For the following reasons, the court agrees with the Commissioner that these objections lack merit.

## IV. **ANALYSIS**

### A. **The ALJ Properly Evaluated the Medical Opinions of Record**

Plaintiff first contends that the ALJ failed to properly consider and weigh the medical opinions of Dr. Stephen B. Burgess, a consultative examiner, and of Michael A. Cartledge, a physician's assistant ("P.A."). (Pl.'s Br. (Doc. 9) at 5.) The treating source rule requires an ALJ to give controlling weight

-7-

to the opinion of a treating source regarding the nature and severity of a claimant's impairment. 20 C.F.R. § 404.1527(c)(2). The rule also recognizes, however, that not all treating sources or treating source opinions merit the same deference. The nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords an opinion. See 20 C.F.R. § 404.1527(c)(2)(ii).

Moreover, as subsections (2) through (4) of the rule describe in detail, a treating source's opinion, like all medical opinions, deserves deference only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. See C.F.R. § 404.1527(c)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). As for P.A.'s, they do not constitute "[a]cceptable medical sources," see 20 C.F.R. § 404.1513(a), but rather are "[o]ther sources," see 20 C.F.R. § 404.1513(d), whose opinions cannot receive controlling weight, but may be used to "show the severity of . . . impairment(s) and how [they] affect[] [a claimant's] ability to work." Id.

### 1.  <u>Dr. Stephen B. Burgess, Consultative Examiner</u>

Dr. Burgess, a consultative examiner, saw Plaintiff in September of 2014, more than two years after her DLI of June 30, 2012, and concluded that Plaintiff could only sit thirty minutes at a time, stand ten to fifteen minutes at a time, and walk five to ten minutes at a time. (Tr. at 491–501, 497.) Dr. Burgess further opined that Plaintiff could sit eight hours in a total workday, stand three hours in a total workday, and walk one hour in a total workday. (<u>Id.</u>) Dr. Burgess also concluded that Plaintiff could only occasionally use her right hand for reaching overhead, handling, fingering, and pushing and pulling. (<u>Id.</u> at 498.) He further concluded that Plaintiff could only frequently use her right hand for reaching and feeling. (<u>Id.</u>) Dr. Burgess next concluded that Plaintiff could only occasionally use her left hand for reaching overhead and even then only use it frequently for all other uses. (<u>Id.</u>) He also opined that Plaintiff could only occasionally operate foot controls with her right foot, and only frequently with her left. (<u>Id.</u>) Last, Dr. Burgess concluded that Plaintiff could only occasionally perform postural maneuvers. (<u>Id.</u> at 499.)

The ALJ "assign[ed] little weight to the opinions of Dr. Burgess [reasoning that] they are based on a single observation

of the claimant after the date last insured, a time that is not relevant to this claim of disability." (Tr. at 95.) Plaintiff contends that this conclusion was "disingenuous" because it was the ALJ who ordered Plaintiff to a consultative examination with Dr. Burgess in the first instance and "when Dr. Burgess' opinion did not come back as [the ALJ] wanted . . . [the ALJ] decided to cast it off as 'irrelevant.'" (Pl.'s Br. (Doc. 9) at 7.) An ALJ, however, may ask a claimant to attend a consultative examination. 20 C.F.R. § 404.1512(e). This is part of the agency's responsibility to develop the record. Id. Here, the ALJ did not err in developing the record in accordance with the regulations.

Plaintiff next contends that the ALJ erred by not considering Dr. Burgess' opinion further, in violation of Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). (Pl.'s Br. (Doc. 9) at 7.) In Bird, the Fourth Circuit considered a claimant's DIB claim. The claimant did "not have any medical records dating before his DLI." Id. at 339. The ALJ in that case refused to consider retrospective medical records created after the DLI that suggested the onset date of the claimant's post-traumatic stress disorder ("PTSD") condition occurred before the DLI. Id. at 340. The ALJ was found to be in

error because the claimant's retrospective, post-DLI evidence could have been the "most cogent proof" of the claimant's pre-DLI condition. Id. at 341 (quoting Moore v. Finch, 418 F.2d 1224, 1226 (4th Cir. 1969)).

The Fourth Circuit therefore concluded that, in some instances, medical evidence that post-dates a claimant's DLI may be considered where it is relevant to prove disability prior to that date. Id. at 340. That court reasoned further "that post-DLI medical evidence generally is admissible in an SSA [Social Security Administration] disability determination in such instances in which that evidence permits an inference of linkage with the claimant's pre-DLI condition." Id. at 341 (citing Moore, 418 F.2d at 1226).

Another court in this district has had the opportunity to consider Bird previously. It determined that "[i]n the case of [post-DLI] medical opinions, the evidence in question 'must relate back to the relevant period' and 'offer a retrospective opinion on the past extent of an impairment'; but, to permit an inference of linkage, the opinions must not be dated 'long after' the DLI or be contradicted by other opinions from the relevant period." Emrich v. Colvin, 90 F. Supp. 3d 480, 485

(M.D.N.C. 2015) (quoting <u>Brown v. Astrue</u>, No. 8:11-03151, 2013 WL 625599, at *15 (D.S.C. Jan. 31, 2013) (unpublished)).

Likewise, <u>Bird</u> has also repeatedly been found "inapplicable where there was meaningful evidence of the claimant's disability" or lack of disability during the DIB coverage period.[4] <u>See, e.g.</u>, <u>Emrich</u>, 90 F. Supp. 3d at 487 (citation

---

[4] <u>See</u> <u>Haila v. Colvin</u>, No. 5:13cv377-CAS, 2014 WL 2475749, at *15 (N.D. Fla. June 3, 2014) (unpublished) ("Unlike the facts in <u>Bird</u>, there was sufficient medical evidence prior to the relevant time period of Plaintiff's claim for the ALJ to determine whether Plaintiff was disabled and the evidence after her date last insured did not establish she was disabled prior to this date. No error has been shown."); <u>Booker v. Colvin</u>, Civil Action No. 1:13-cv-2033-TMC, 2014 WL 6816878, at *5 (D.S.C. Dec. 4, 2014) (unpublished) ("Unlike in <u>Bird</u> where there was no medical evidence prior to the claimant's date last insured, 699 F.3d at 339, here, the record before the ALJ included [pre-DLI] medical testimony, none of which indicated that Booker needed to keep his legs elevated."); <u>Greifenstein v. Colvin</u>, Civil No. 2:13cv81, 2014 WL 198720, at *4 (E.D. Va. Jan. 15, 2014) (unpublished) ("Therefore, since the pre-DLI evidence actually weighs against any inference of linkage there was no error on the part of Magistrate Judge Miller in not remanding this case pursuant to <u>Bird</u> . . . ."); <u>see also</u> <u>Rivera v. Colvin</u>, No. 5:11-CV-569-FL, 2013 WL 2433515, at *4 (E.D.N.C. June 4, 2013) (unpublished) (finding harmless error in ALJ's analysis of medical opinions where the "opinion regarding plaintiff's limitations in 2006 is not consistent with substantial evidence in the record pertaining to the time period of alleged disability supporting the ALJ's RFC determination . . . .") (citing <u>Ambrose v. Astrue</u>, Civil No. 2:11cv683, 2013 WL 1308981, at *12 (E.D. Va. Mar. 28, 2013) (unpublished) (holding that failure to explain weight given to treating physician opinion harmless error where opinion issued two years after DLI was "not consistent with the record during the relevant period")).

-12-

omitted) ("[A] linkage between Emrich's pre- and post-DLI depression conditions was unnecessary because Emrich was treated for depression throughout her disability insurance coverage period, and the ALJ considered whether that direct evidence supported a finding of disability.").

This case is distinct from <u>Bird</u>. In <u>Bird</u>, as noted, the claimant's post-DLI diagnosis of PTSD had not previously been diagnosed, nor were there medical records dated before his DLI. Here, however, the record contains well-documented, meaningful, and direct evidence of Plaintiff's history of back, neck, and wrist problems prior to her DLI, which was fully considered by the ALJ. (<u>See</u> Tr. at 92-96.)

Moreover, Dr. Burgess' 2014 medical opinion, described above, was inconsistent with the medical evidence prior to Plaintiff's June 30, 2012 DLI, which showed milder symptoms and lesser limitations. For example, the record indicates that in April 2012 her back was "doing better" and she had only "mild" arthralgia in her hands and wrists, with tenderness, and no synovitis of her joints. (<u>Id.</u> at 329.)

In July 2012, Plaintiff reported that her joints were better with the use of Naprosyn and she had no wrist tenderness or swelling. (<u>Id.</u> at 327-28.) Michael Cartledge, P.A.,

documented in 2011 and 2012 that Plaintiff's complaints included hip and hand pain (id. at 343-62), but that she had a normal gait, some pain and tenderness, but no swelling in the hand joints (id. at 346, 350, 352, 355, 359). In March 2012, Plaintiff was negative for arthralgia, back pain, limb pain, or myalgia. (Id. at 352.)

As the Commissioner correctly observes, not until 2013, after Plaintiff's June 30, 2012 DLI, did P.A. Cartledge document a worsening of Plaintiff's condition. (Mem. in Supp. of Comm'r's Mot. for J. on the Pleadings ("Comm'r's Br.") (Doc. 11) at 11 (citing Tr. at 453).) Moreover, Plaintiff's complaints to Dr. Burgess in 2014 reflect increased symptoms and greater limitations than she had previously alleged with her application for benefits in 2012 and prior to her DLI. For example, in her application for benefits, Plaintiff acknowledged that she engaged in ADL's that included extensive household chores and caring for a puppy. (Tr. at 260-64.) Although some limitations in sitting, standing, and walking, were alleged, Plaintiff admitted that she was able to walk a quarter mile without stopping or resting. (Id. at 265.)

Consequently, this case is unlike Bird and more like those cases in which (1) the post-DLI evidence failed to offer a

-14-

retrospective opinion on the past extent of impairments, and where (2) the post-DLI evidence was contradicted by other record evidence from the relevant period. See Emrich, 90 F. Supp. 3d at 485; Haila, 2014 WL 2475749, at *15; Booker, 2014 WL 6816878, at *5; Greifenstein, 2014 WL 198720, at *4; Rivera, 2013 WL 2433515, at *4; Ambrose, 2013 WL 1308981, at *12. For all these reasons, Plaintiff has failed to demonstrate prejudicial error in the ALJ's discussion of Dr. Burgess' medical opinions, or the ALJ's decision to afford those opinions little weight.

### 2.   **Michael H. Cartledge, Physician's Assistant**

Next, Plaintiff contends that the ALJ erred in giving little weight to P.A. Cartledge's September 2014 opinion that Plaintiff was limited to less than sedentary work and was totally disabled. (Pl.'s Br. (Doc. 9) at 9 referencing Tr. 502-08.) However, the ALJ's decision on this issue is well-supported for a number of reasons.

First, the ALJ appropriately pointed out that, as a P.A., Cartledge was not an acceptable medical source and his opinion, alone, could not constitute documentation of severe or disabling limitations. (Tr. at 95.) See 20 C.F.R. § 404.1513(a) (identifying acceptable medical sources who can provide evidence to establish an impairment). The ALJ nevertheless properly

-15-

considered P.A. Cartledge's conclusions regarding the severity and effect of Plaintiff's functioning. 20 C.F.R. § 404.1513(d) (listing physicians' assistants as "[o]ther sources"); (Tr. at 95).

Second, the ALJ explained that the opinions of P.A. Cartledge were dated after Plaintiff's DLI and did not address her medical state or the severity of her symptoms as they existed during the relevant period of her claim. (Tr. at 95.) This was also proper because P.A. Cartledge rendered his opinion in September 2014, more than two years after Plaintiff's DLI of June 30, 2012. (Id. at 86, 502.)

Plaintiff contends that by his reference to "[h]er present medical state, especially over the last four years," (id. at 502), P.A. Cartledge intended his 2014 opinion to be an assessment of her current functioning and her functioning in 2010, four years earlier. (Pl.'s Br. (Doc. 9) at 9.) The court agrees with the Commissioner, however, that absent support in the medical record, a conclusory reference to a time period up to four years earlier does not render P.A. Cartledge's opinion entitled to greater weight. P.A. Cartledge's records from 2010 to 2012 do not show that Plaintiff had disabling functional limitations. Instead, they demonstrate rheumatoid arthritis

treated with medication, some stiffness in her joints, and some hand pain, but no joint or muscle pain, and the ability to walk with a normal gait. (Tr. at 346-60, 363-432.) As explained previously, to the extent P.A. Cartledge documented a worsening of Plaintiff's condition, it occurred after her DLI.

Third, the ALJ appropriately explained that P.A. Cartledge's opinion was entitled to little weight because the opinion of disability is reserved to the Commissioner. (Id. at 95.) See 20 C.F.R. § 404.1527(d)(1).[5] For all these reasons, the ALJ's assessment of P.A. Cartledge's opinion was without material error.

## B. The ALJ's Properly Considered Plaintiff's ADL's

Plaintiff next contends that the ALJ erred in relying on her ability to perform ADL's in assessing her credibility and

---

[5] Plaintiff contends that this case warrants remand because of its similarities to Fletcher v. Colvin, No. 1:14CV380, 2015 WL 4506699, at *5-8 (M.D.N.C. July 23, 2015). Reliance on Fletcher is not justified, however. In Fletcher, the ALJ found the plaintiff capable of medium work, which is significantly heavier than the light work found by the ALJ here. Id. Although the court in Fletcher did fault the ALJ for not qualifying the plaintiff's ADL's, it focused on the fact that the ADL's relied upon by the ALJ did not demonstrate an ability to perform the demanding requirements of medium work. Id. That is not the case here as this case involves light work. (Tr. at 90.) Moreover, unlike the ALJ in Fletcher, the ALJ here acknowledged that Plaintiff could not perform ADL's "at the same level as she did prior to the onset of her impairments" and "reflected th[o]se limitations in the . . . [RFC]." (Tr. at 93.)

RFC. (Pl.'s Br. (Doc. 9) at 10-11.) For the following reasons, the court agrees with the Commissioner that this argument also lacks merit.

The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); see also SSR 96-8P, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *5 (July 2, 1996). As for credibility, Craig v. Chater provides a two-part test for evaluating a claimant's statements about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Craig, 76 F.3d at 594 (citing 20 C.F.R. §§ 416.929(b) & 404.1529(b)).

If the ALJ determines that such an impairment exists, the second part of the test then requires the ALJ to consider all available evidence, including the claimant's statements about pain, in order to determine whether the claimant is disabled. Id. at 595-96. While the ALJ must consider a claimant's

statements and other subjective evidence at step two, the ALJ
need not credit them to the extent they conflict with the
objective medical evidence or to the extent that the underlying
impairment could not reasonably be expected to cause the
symptoms alleged. Id. Where the ALJ has considered the relevant
factors,[6] including ADL's, and has heard the claimant's testimony
and observed her demeanor, the ALJ's credibility determination
is entitled to deference. Shively v. Heckler, 739 F.2d 987, 989
(4th Cir. 1984).

Plaintiff's contention that the ALJ materially erred in
assessing her ADL's is unpersuasive, because the ALJ
appropriately considered Plaintiff's ADL's as one factor of many
in evaluating her RFC and credibility. (Tr. at 91-94). See 20
C.F.R. § 404.1529(c)(3)(i). Here, the ALJ first noted at

---

[6] The regulatory factors are: (i) the claimant's daily
activities; (ii) the location, duration, frequency, and
intensity of the claimant's pain or other symptoms; (iii)
precipitating and aggravating factors; (iv) the type, dosage,
effectiveness, and side effects of any medication the claimant
takes or has taken to alleviate her pain or other symptoms; (v)
treatment, other than medication, the claimant receives or has
received for relief of her pain or other symptoms; (vi) any
measures the claimant uses or has used to relieve her pain or
other symptoms; and (vii) other factors concerning the
claimant's functional limitations and restrictions due to pain
or other symptoms. 20 C.F.R. § 404.1529(c)(3).

-19-

considerable length Plaintiff's alleged limitations. (Tr. at
91-92.)

Next, the ALJ met the first step of the <u>Craig</u> inquiry,
finding that Plaintiff's medically determinable impairments were
capable of producing at least some of the alleged symptoms.
(<u>Id.</u> at 92.) The ALJ then turned to the second step, finding
that "the claimant's testimony as to the specific intensity,
persistence, and limiting effects of her pain and other
subjective symptoms is not persuasive in view of the various
reported activities of daily living and the inconsistencies in
the record." (<u>Id.</u>)

In support, the ALJ considered Plaintiff's subjective
complaints in the context of the entire record. (<u>Id.</u> at 92-96.)
For example, the ALJ noted that Plaintiff acknowledged in her
application that she engaged in ADL's that included making beds,
washing dishes, vacuuming, mopping the floor, washing clothes,
cooking two-to-three course meals, playing with her dog, playing
games on the computer, checking the mailbox, mopping the garage
floor, and dusting. (<u>Id.</u> at 92, 260-64.) The ALJ also noted that
Plaintiff described herself as changing sheets once a week,
cooking for her mother-in-law, taking her mother-in-law to
appointments, washing and putting away her mother-in-law's

-20-

clothes, cleaning the inside of her car, washing her car, and shopping for clothes every six months. (Id. at 92-93, 260-64.) Plaintiff also told Dr. Burgess in September 2014 that she was able to perform similar ADL's. (Id. at 93, 492.)

The ALJ thus concluded that these ADL's reflected the ability to perform work-related activities in some form prior to, and after, her DLI. (Id. at 93.) The ALJ found, therefore, that although Plaintiff may not have been able to perform ADL's at the same level as she did prior to the onset of her impairments, she was able to perform them in some limited capacity which was accounted for in the RFC determination of unskilled, light work. (Id. at 93.) Consequently, the ALJ took into account Plaintiff's qualifications, to the extent they were credible, that while she could perform some ADL's she could only do so in a limited manner.

In further support of her finding, the ALJ explained how Plaintiff's treatment notes prior to her DLI contradicted or, failed to support, her later allegations of severe pain symptoms and limitations. (Id. at 93.) The ALJ noted (1) a physical examination in 2010 revealed full strength and no motor deficits (id. at 93, 441); (2) an examination in December 2010 was largely normal except for "mildly" restricted range of motion of

-21-

the spine and some pain and tenderness, with a normal gait (id. at 93, 323-25); (3) an examination in November 2011 revealing a normal gait and a musculoskeletal system with normal functioning and no edema (id. at 93, 359); (4) normal musculoskeletal examinations in January, March, and July of 2012, with a normal gait (id. at 350, 352, 355); (5) an examination in April 2012 in which Plaintiff reported improvement in her back pain and only some mild arthralgia in her hands and wrists (id. at 329); and (6) an examination in December 2012 that was normal despite complaints of hip pain (id. at 344).

The ALJ also explained that even after her DLI, the evidence called into question the alleged severity of Plaintiff's symptoms. (Id. at 93.) In January 2013, Plaintiff described diffuse joint pain that had been a problem for the previous five years. (Id. at 93, 446.) Contrary to her subsequent testimony, however, at the time, Plaintiff characterized her symptoms as having been mild or transient with episodic flare-ups. (Id.) The ALJ also noted that like her other examinations, Plaintiff's physical examination was normal and reflected a normal gait and movement. (Id. at 446-47.) Moreover, examinations in March, May, August, and November of 2013 were

normal and, on several occasions, Plaintiff exhibited a normal gait. (Id. at 448-51, 455, 459-60.)

Finally, Plaintiff's treatment was essentially routine and conservative in nature. (Id. at 93.) Other than some chiropractic and primary care treatment, there was no evidence that Plaintiff engaged in treatment such as physical therapy, consistent or ongoing steroid injections or pain blocks, or formal pain management. (Id. at 93-94.) See Dunn v. Colvin, 607 F. App'x 264, 273 (4th Cir. 2015) (holding that an ALJ's consideration of the conservative nature of treatment was a proper factor to be considered in a credibility analysis). To sum, Plaintiff has failed to demonstrate prejudicial error as to either the ALJ's credibility analysis or her RFC determination.

### C. The ALJ's RFC Finding Sufficiently Accounts for Plaintiff's Limitations in CPP

Last, Plaintiff contends that the ALJ failed to explain why her moderate limitations in CPP were not addressed in the RFC. (Pl.'s Br. (Doc. 9) at 12.)  This objection lacks merit too.

In Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), the Fourth Circuit expressly held that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Mascio, 780

-23-

F.3d at 638. However, that court also allowed for the possibility that an ALJ could adequately explain why moderate limitations in CPP would not require the RFC to include specific restrictions related to the ability to stay on task. Id.

A neighboring federal district court recently had occasion to discuss this very point:

> Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision . . . .
>
> . . . .
>
> . . . An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Jones v. Colvin, Civil Action No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015)(unpublished); see also Hutton v. Colvin, Civil Action No. 2:14-CV-63, 2015 WL 3757204, at *2-3 (N.D. W. Va. June 16, 2015) (unpublished) (finding reliance on Mascio "misplaced" and that ALJ "gave abundant explanation" for why unskilled work adequately accounted for claimant's moderate

limitation in CPP, where ALJ relied on claimant's ADL's and treating physician opinions of claimant's mental abilities).

This case is distinct from <u>Mascio</u>, because here the ALJ explained at considerable length why Plaintiff's moderate limitations in CPP were accounted for by a mental RFC finding limiting her to simple, routine, repetitive tasks with simple, short instructions, in a job that required making only simple, work-related decisions, involved few workplace changes, and required only frequent contact with supervisors, co-workers, or the public. Here, the ALJ first evaluated Plaintiff's mental impairment (depression) at step three to determine whether it met or medically equaled the requirements of a disabling impairment under listing 12.04 (affective disorder) or 12.06 (anxiety related disorder) of the Listing of Impairments. (Tr. at 89-90.) 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04, 12.06. The ALJ determined that Plaintiff's depression did not meet or equal a listed impairment because, in part, it resulted in only moderate difficulties in maintaining CPP. (Tr. at 90.)

In assessing Plaintiff's limitations in CPP at step three, the ALJ appropriately focused on Plaintiff's concentration because Plaintiff alleged that she had difficulty with memory due to attention deficit disorder. (<u>Id.</u> at 118-19.) The ALJ

noted, for example, that in her function report, Plaintiff had indicated that she was not able to pay attention for long, but also admitted that she could follow written and spoken instructions well. (Id. at 90, 265.) The ALJ also noted, however, that Plaintiff acknowledged that none of her impairments affected her memory, her ability to complete tasks, her ability to concentrate and understand things, or her ability to follow instructions. (Id.) The ALJ further noted that Plaintiff had testified that she had problems with short-term memory. (Id. at 90, 131.) Therefore, the ALJ reasonably found that Plaintiff had moderate difficulties in CPP. (Id. at 90.)

Next, after evaluating Plaintiff's mental impairment at step three, the ALJ assessed Plaintiff's mental RFC. (Id. at 90-91.) The ALJ determined that Plaintiff had the mental RFC capacity for unskilled work with only simple, routine, repetitive tasks with simple, short instructions, in a job that required making only simple, work-related decisions, involved few workplace changes, and required only frequent contact with supervisors, co-workers, or the public. (Id.)

The ALJ then proceeded to support this determination at some length. Specifically, she stated:

> The medical evidence also suggests that the claimant's mental health impairments were not as

-26-

severe as she alleges. For example, the claimant's
primary care provider noted in December 2012 that her
mental status and affect were appropriate and by
August 2013, the claimant herself was denying that she
was depressed. (4F, 8F) There is no evidence that the
claimant sought mental health treatment or
psychotherapeutic care on her own and none of her
medical providers referred her for mental health
treatment nor did they even suggest that she engage in
psychotherapeutic care, suggesting that the claimant's
mental health symptoms were manageable with the
psychotropic medications her primary care provider
prescribed.

(Id. at 94, 344, 455, 344-439, 446-66.) In light of this, the

court concludes that the ALJ has pointed to sufficient

substantial evidence in support of the mental RFC findings.

Additionally, unlike Mascio, Plaintiff's limitations in

maintaining CPP did not pertain to pace, but instead to

attention and concentration. (Id. at 90, 118-19, 265.) Nor does

the record show that Plaintiff had difficulty with pace.

Plaintiff acknowledged that none of her alleged impairments

affected her ability to complete tasks. (Id. at 265.)

Finally, the record as a whole provides substantial support

for the ALJ's mental RFC finding. As the Commissioner correctly

points out (Comm'r's Br. (Doc. 11) at 19), Plaintiff completed

two years of college. (Id. citing Tr. at 253.) She also liked to

read and play games on the computer. (Tr. at 260, 264.) She

engaged in extensive and wide-ranging ADL's, described above.

-27-

(Id. at 260-63.) These abilities reflect CPP consistent with the ALJ's RFC finding and support the ALJ's finding that Plaintiff was not disabled. (Id. at 84-98.)

## V.   CONCLUSION

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is legally correct and supported by substantial evidence.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **AFFIRMED**, that Plaintiff's motion for judgment on the pleadings (Doc. 8) is **DENIED**, that the Commissioner's motion for judgment on the pleadings (Doc. 10) is **GRANTED**, and that this action is **DISMISSED WITH PREJUDICE**.

A judgment consistent with this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 28th day of November, 2016.

_____
United States District Judge

-28-